**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

M.H. a minor, by her mother and guardian, D.H.

                 Plaintiff,

                 v.

C.M., TINA RITCHIE, LOREN MARCUS, NORTH WARREN REGIONAL SCHOOL DISTRICT, NORTH WARREN REGIONAL BOARD OF EDUCATION, JOHN DOES (1-20) (FICTITIOUS INDIVIDUALS), ABC OWNER CORPORATIONS (A-Z) (FICTITIOUS CORPORATIONS),

                 Defendants.

Case No. 3:20-cv-01807 (BRM) (TJB)

**OPINION**

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion to Dismiss filed by Defendants North Warren Regional School District (the "School District"), North Warren Regional Board of Education (the "Board") (together, "North Warren Defendants"), Tina Ritchie ("Ritchie"), and Loren Marcus ("Marcus") (together, "Individual Defendants") (collectively, "Moving Defendants") seeking to dismiss Plaintiff M.H.'s ("M.H."), a minor, by her mother and guardian, D.H. ("D.H.") (together, "Plaintiff") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 7-5.)[1] Plaintiff filed an Opposition to the Motion to Dismiss (ECF No. 13) and Moving Defendants filed a Reply Brief to Plaintiff's Opposition to the Motion to Dismiss. (ECF No. 14.) Having reviewed

---

[1] Defendant C.M. has not made an appearance.

the submissions filed in connection with the motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, Moving Defendants' Motion to Dismiss the Complaint is **GRANTED in part and DENIED in part**.

## I.    BACKGROUND

For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to the plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

This case arises from the alleged sexual assault of M.H. by C.M., both students at North Warren Regional School District ("North Warren Regional"), a public high school and regional school district that serves students in the seventh through twelfth grades and is located in Blairstown, New Jersey.[2] (*See generally* ECF No. 1.) M.H. began attending North Warren Regional in September 2017 and receives an Individualized Education Plan ("IEP") due to an early age diagnosis for Attention Deficit Hyperactivity Disorder ("ADHD"), Auditory Processing Disorder, and Asperger's autism. (*Id.* ¶¶ 17, 19.) Due to her disabilities, M.H. had difficulty making friends and was often ostracized from her peers. (*Id.* ¶ 21.) In the seventh grade, C.M., also diagnosed with learning disabilities, began sharing most of her classes with M.H. and the two became friends. (*Id.* ¶¶ 22–24.)

---

[2] North Warren Regional serves students from four constituent New Jersey townships of Blairstown, Frelinghuysen, Hardwick, and Knowlton and is located at 10 Noe Road, Blairstown, NJ 07825. (*See id.*   ¶¶ 3–5.)

In the middle of the 2017 school year, C.M. told M.H. she wanted to be a boy, requested to be called "Chase," and for everyone to refer to her using male pronouns. (*Id.* ¶¶ 25–27.)[3] C.M. asked M.H. to be her girlfriend and to hold M.H.'s hand when they walked through the hallways. (*Id.* ¶¶ 30, 32.) Due to M.H.'s disabilities, M.H. did not understand the difference between a friend and girlfriend. (*Id.* ¶ 31.)

In March of 2018, C.M. began to sexually assault M.H., who was then twelve years old, every day during North Warren Regional's lunch period. (*Id.* ¶¶ 33–34.) The sexual abuse, which took place in the girls' bathroom, involved C.M. placing C.M's hands under M.H.'s shirt and bra, C.M. grabbing M.H.'s breasts, C.M. digitally penetrating M.H.'s vagina, C.M. putting her hands into M.H.'s undergarments, and C.M. pushing M.H. into the girl's bathroom stalls. (*Id.* ¶ 35.) M.H. would attempt to push off C.M.'s advances by telling C.M. "no." (*Id.* ¶ 36.) C.M. threatened M.H. with self-harm, including cutting, if M.H. did not oblige C.M. (*Id.* ¶ 37.) Later, C.M.'s threats of self-harm evolved to threats of harm against M.H.'s person and M.H.'s family. (*Id.* ¶ 38.)

M.H., in an effort to be less appealing to C.M., stopped grooming and showering (*id.* ¶ 39)[4] and had become "very depressed" and "shut down." (*Id.* ¶ 43.) Out of concern for her daughter, D.H. between April and May of 2018, contacted the School District through its Supervisor of Special Services, Marcus. (*Id.* ¶ 42.) Marcus informed D.H. that M.H. was "dating" C.M. and they were seen holding hands in the hallway. (*Id.* ¶ 44.) D.H. told Marcus that M.H. was not allowed to "date" given her special needs and was to be kept away from C.M. (*Id.* ¶ 45.) In response, Marcus promised D.H. she would investigate the matter and suggested M.H.'s signs and symptoms

---

[3] At this time, C.M. also explained to M.H. that C.M. was receiving hormone therapy injections, seeing a therapist for gender counseling and was using the nurse's office to change clothes for P.E. class. (*Id.* ¶¶ 26, 29.)

[4] Specifically, M.H. stopped bathing, combing her hair, and brushing her teeth. (*Id.* ¶ 39.)

were likely the result of M.H.'s "dating relationship" with C.M. (*Id.* ¶¶ 46–47.) At this time, "Defendants had actual knowledge that Plaintiff M.H. was being abused by Defendant C.M." (*Id.*¶ 47.)

Despite "promises of action," Marcus did not follow through on investigating and the sexual abuse persisted throughout the remainder of the school year and continued once again in September 2018 when the new school year commenced. (*Id.* ¶¶ 48–50.) Using the bathroom during the lunch period required informing a teacher, signing out using an I-pad, and using a hall pass. (*Id.* ¶ 55.) Each day at around 10:45 a.m., M.H. would sign out and C.M. would follow her approximately two minutes later. (*Id.* ¶ 54.) None of the teachers at North Warren Regional ever questioned why C.M. and M.H., who were, according to School District administrators, including Marcus, in a "dating relationship" both utilizing the girls' bathroom at the same time, every day during the school lunch period. (*Id.* ¶ 56.) Other students witnessed the abuse and informed some of the teachers. (*Id.* ¶ 57.) Moreover, as the abuse was ongoing, C.M. would "regularly ma[k]e inappropriate comments to [] M.H., in the classroom, in front of other students and teachers, stating that [] C.M. wanted to touch [] M.H.'s vagina and breasts." (*Id.* ¶ 58.)

While the sexual abuse ceased in December 2018 when C.M. "moved on to a different girl" (*id.* ¶¶ 50, 59), C.M. continued to verbally harass and bully M.H. (*Id.* ¶ 59.) Indeed, in April 2019, M.H. received detention for standing up to C.M. by demanding C.M. stop bullying and harassing her. (*Id.* ¶ 60.) Also, in April 2019, C.M. accused M.H. of raping C.M. (*Id.* ¶ 61.) Thereafter, M.H. was required to give a statement to the Dean of Students and Supervisor of the North Warren Regional School Guidance Department, Ritchie. (*Id.* ¶ 62.) M.H. told Ritchie it was she, M.H., who was in fact being raped. (*Id.* ¶ 63.) Ritchie "immediately believed" M.H. and told D.H. to

bring M.H. to the Blairstown Police Special Victims Unit ("SVU") to file a report and have an interview with one of their officers.[5] (*Id.*)

Following the interview with the SVU, M.H. was kept home for a few days until Ritchie called D.H. asking when M.H. would return to North Warren Regional. (*Id.* ¶ 66.) To alleviate D.H.'s concerns over M.H.'s safety, on April 25, 2019, Ritchie told D.H. that aides would be provided to both M.H. and C.M. to ensure C.M. be kept away from M.H. (*Id.* ¶ 67.) The aides, however, would not be informed of the allegations of sexual abuse against C.M. because, according to Ritchie, "it was in [] M.H.'s best interest to not have the information spread and that the school wanted to keep the incident quiet" and no one from the School District or Board would know about the abuse aside from the Individual Defendants. (*Id.*)

Despite assurances an aide would be provided to both M.H. and C.M., only C.M. was provided an aide, and because the aide was not aware of the allegations of sexual abuse against C.M., C.M. continued to harass and bully M.H. by referencing the sexual abuse. (*Id.* ¶ 68.) On May 7, 2019, D.H. expressed concern to the Individual Defendants and the School District over C.M.'s bullying of M.H. (*id.* ¶ 70.) and decided ultimately to pull M.H. out of North Warren Regional to begin homeschooling her because the Moving Defendants "downplayed the seriousness of the situation," and "failed to provide any remedy." (*Id.* ¶¶ 70, 76.)[6] Rather than proactively investigate C.M.'s conduct, Moving Defendants stated to D.H.: "We reported the incident to the Blairstown Police Department and they informed us that they were investigating the incident. When the police investigate an incident, we are not permitted to conduct our own

---

[5] M.H.'s interview with the SVU was conducted with Officer Russoniello and appears to still be ongoing. (*Id.* ¶ 65.)

[6] M.H. was homeschooled from May 2019 to September 2019. (*Id.* ¶ 82.)

internal investigation until their investigation is complete," (*id.* ¶ 72) and, "Not knowing the extent of the incident and not having the ability to investigate on our own, we took the precaution of placing an adult in all of Plaintiff M.H.'s classes to reduce opportunities for her and the other student to interact." (*Id.* ¶ 73.)

Between late May and June of 2019, D.H. went to a Board of Education meeting in Belvidere, New Jersey to request M.H. attend a different school, but her request was denied. (*Id.* ¶ 78.) On May 31, 2019, Plaintiff filed a Notice of Tort Claim against the Moving Defendants. (*Id.* ¶ 79.)

Thereafter, the Moving Defendants began to pursue M.H.'s return to North Warren Regional. (*Id.* ¶ 80.) M.H. only rejoined North Warren Regional in September 2019 after D.H. learned C.M. was no longer a student there. (*Id.* ¶ 83.)[7] Since returning to North Warren Regional, M.H. has continued to experience bullying relating to the sexual abuse she sustained from C.M., and the School District, aware of this bullying, has done nothing to prevent M.H. from being bullied at North Warren Regional. (*Id.* ¶ 84.)

On February 20, 2020, Plaintiff filed a twenty-one-count Complaint against the Moving Defendants for: violations of Title IX (Counts I and II); violations of Section 1983 (Counts III and IV); violation of the New Jersey Law Against Discrimination ("NJLAD") (Count V); aggravated sexual assault in violation of N.J. Stat. Ann. § 2C:14-2(a) (1) (Count VI); sexual assault in violation of N.J. Stat. Ann. § 2C:14-2(c) (1) (Count VII); assault (Count VIII); battery (Count IX); false

---

[7] At this time, Moving Defendants sent D.H. a letter indicating they would provide M.H. with a schedule that would ensure M.H. be kept away from C.M. However, because additional supervision "had already failed previously," D.H. made the decision to not allow Moving Defendants to subject M.H. to further abuse and continued homeschooling M.H from May 2019 through late September 2019. (*Id.* ¶¶ 81–82.)

imprisonment (Count X); negligent supervision of students (Count XI); negligent hiring (Count XII); negligent supervision of employees (Count XIII); negligent retention (Count XIV); negligent failure to suspend, expel or otherwise discipline C.M. in violation of N.J. Stat. Ann. § 18A:37-2 (Count XV); negligence (XVI); gross negligence (XVII); willful, wanton, reckless conduct (Count XVIII); intentional infliction of emotional distress (Count XIX); negligent infliction of emotional distress (Count XX);[8] fictitious parties (Count XXI). (ECF No. 1.) On March 12, 2020, the Moving Defendants filed a Motion to Dismiss thirteen of the twenty-one counts cited in the Complaint. (ECF No. 7-5.) Specifically, the Moving Defendants request the Court dismiss Counts 1, 2, 5, 6, 7, 8, 9, 10, 12, 13, 14, 19, and 20 of the Complaint. (*Id.*) On May 12, 2020, Plaintiff filed an Opposition to the Motion to Dismiss. (ECF No. 13.) On May 26, 2020, Moving Defendants filed a Reply to the Opposition to the Motion to Dismiss. (ECF No. 14.)

## II.   LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*,

---

[8]  Plaintiff inadvertently labeled "Count XX" as "Count XXX" in the Complaint. (*See* ECF No. 1 ¶¶ 278–85.)

7

478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

## III.   DECISION

The Moving Defendants seek to dismiss thirteen of the twenty-one counts cited in the Complaint. (*See* ECF No. 7-5.) The Court addresses each argument in turn.

### A.  Title IX (Counts I and II)

Plaintiff brings Counts I and II against the North Warren Defendants only. (*See* ECF No. 1 at 15, 20.) North Warren Defendants argue Plaintiff's Title IX claims should be dismissed because Plaintiff fails to allege facts sufficient to establish North Warren Defendants' deliberate indifference to the alleged sexual harassment (Count I) and retaliation against M.H. for complaining about sexual harassment and bullying (Count II). (*See* ECF No. 7-5 at 18–19, 22.) With respect to Count I, Plaintiff argues she sufficiently pled deliberate indifference to M.H.'s allegations of sexual harassment against C.M., and, concerning Count II, Plaintiff asserts she sufficiently alleged she received detention for speaking out against sexual assault from C.M. (*See* ECF No. 13 at 51–52, 53.)

### 1.  Deliberate Indifference

Title IX of the Education Amendments of 1972 ("Title IX") provides in relevant part: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). "This provision, which is enforceable through an implied private right of action, was enacted to supplement the Civil Rights Act of 1964's bans on racial discrimination in the workplace and in universities." *Doe v. Columbia Univ.*, 831 F.3d 46, 53 (2d Cir. 2016) (citing *Yusuf v. Vassar Coll.*, 35 F.3d 709, 714–15 (2d Cir. 1994)); *see A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 805 (3d Cir. 2007).

It is settled a funding recipient's deliberate indifference to sexual harassment of a student by another student can constitute sex discrimination under Title IX. *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 643 (1999). For a school district to be held liable for a claim of student-on-student sexual harassment under Title IX, a plaintiff must establish: (1) the defendant receives federal funds; (2) sexual harassment occurred; (3) the harassment occurred under "circumstances wherein the recipient exercise[d] substantial control over both the harasser and the context in which the known harassment occur[red];" (4) the funding recipient had "actual knowledge" of the harassment; (5) the funding recipient was "deliberately indifferent" to the harassment; and (6) the harassment was "so severe, pervasive, and objectively offensive that it [could] be said to [have] deprive[d] the victims of access to the educational opportunities or benefits provided by the school." *Id.* at 645, 650.

The parties do not dispute the School District receives federal financial assistance pursuant to Title IX and that Plaintiff contends sexual abuse occurred. It also is clear the asserted abuse occurred under circumstances wherein the School District exercised substantial control over both

M.H. and C.M. All of the alleged sexual abuse occurred on North Warren Regional  property while the North Warren Regional  was in session, and the sexual abuse led to M.H. becoming "very depressed," "shutdown," and was eventually pulled out of the North Warren Regional by D.H. The North Warren Defendants essentially challenge the Complaint's factual showing as it relates to the fourth and fifth elements.

A school district has knowledge under Title IX if an "appropriate person" has "actual knowledge of discrimination in the recipient's programs" and/or is aware of underlying facts that actually indicate a substantial danger to its students. *Bostic v. Smyrna Sch. Dist.*, 418 F.3d 355, 361 (3d Cir. 2005). Such knowledge will be deemed to be present where the victim of the harassment reported the events to an "appropriate person" who is, at a minimum "an official of the recipient entity with authority to take corrective action to end the discrimination." *Gebser v. Lago Vista Ind. Sch. Dist.*, 524 U.S. 274, 290 (1998).

Beginning in and around April and May of 2018, and continuing over the course of the next full year, Plaintiff had several communications with both Marcus, the Supervisor of Special Services, and Ritchie, the Dean of Students and Supervisor of the North Warren School Guidance Department concerning the sexual abuse. (ECF No. 1 ¶¶ 42, 62–64, 67, 70–75, 81.) A school supervisor or school dean, much like a school principal or school district superintendent, is an appropriate school official to whom student-on-student harassment should be reported and each is capable of taking corrective action to eliminate the inappropriate conduct. *See Warren v. Reading Sch. Dist.*, 278 F.3d 163, 171 (3d Cir. 2002) ("[A] school principal who is entrusted with the responsibility and authority normally associated with that position will ordinarily be 'an appropriate person' under Title IX.").

When D.H. approached Marcus with concerns over her daughter's well-being, Marcus noted that a "dating relationship" took place between C.M. and M.H. (ECF No. 1 ¶ 43–45.) And when D.H. told Marcus that M.H. was not allowed to date given her special needs and was to be kept away from C.M., Marcus, "[d]espite promises of action," did not address D.H.'s concerns and the sexual abuse continued for the remainder of the school year and once again in September of 2018 when the new school year began. (*Id.* ¶¶ 47–50.) Further, when M.H. informed Ritchie she was being sexually abused by C.M., Ritchie "immediately believed" M.H. and told her to file a report with the SVU. (*Id.* ¶¶ 62–64.) And still, when aides were to be provided to both M.H. and C.M. for M.H.'s protection, Ritchie did not tell C.M.'s assigned aide about the allegations of sexual abuse because it was, according to Ritchie, in M.H.'s "best interest to not have the information spread and [] the school wanted to keep the incident quiet." (*Id.* ¶ 67.)

Against this backdrop, the Court is satisfied Plaintiff has adequately pled the North Warren Defendants acted unreasonably in light of the known circumstances and in a manner that permits a finding of deliberate indifference. *See Doe v. Bellefonte Area Sch. Dist.*, 106 F. App'x 798, 799 (3d Cir. 2004) ("The relevant inquiry for purposes of evaluating whether [a school district] was deliberately indifferent to known circumstances of harassment is to review its response to reported incidents of harassment."); *Zeno v. Pine Plains Cent. School Dist.*, 702 F.3d 655, 666 (2d Cir. 2012).

Accordingly, for the reasons stated above, Moving Defendants' Motion to Dismiss Count I as to the North Warren Defendants is **DENIED**.

### 2.  Retaliation

M.H. asserts a Title IX claim against the North Warren Defendants under a theory of "retaliation" for complaining of sexual harassment. *See Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d

545, 563–64 (3d Cir. 2017); *see also Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173–74 (2005) ("Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action.").

To establish a prima facie case of retaliation, a plaintiff must show: (1) she engaged in protected activity; (2) defendant had knowledge of the protected activity; (3) adverse school-related action was taken against plaintiff; and (4) a causal connection between the protected activity and the adverse action. *See Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016). *Yan v. Penn State Univ.*, 529 F. App'x 167, 171 (3d Cir. 2013) (citing *Papelino v. Albany College of Pharmacy of Union Univ.*, 633 F.3d 81, 91 (2d Cir. 2011)).

Plaintiff easily satisfies the first and second requirements. It is asserted throughout the Complaint that Plaintiff reported incidents of bullying and sexual abuse. These complaints were made to the Individual Defendants, each of whom were apprised of the particularly vulnerable nature of M.H. given her special needs and had the ability to implement corrective measures and/or intervene on M.H.'s behalf concerning C.M.'s bullying and sexual abuse. *S.K. v. N. Allegheny Sch. Dist.*, 168 F. Supp. 3d 786, 801 (W.D. Pa. 2016) (finding the first and second requirements were satisfied where plaintiff and her parents reported to the principal and superintendent incidents of bullying and sexual harassment).

Plaintiff has fallen short of meeting the third prong because the Complaint does not allege specific action taken by the North Warren Defendants that can be found to be "materially adverse" within the meaning of Title IX's prohibition against retaliation. To satisfy this requirement, a plaintiff must identify action that is adverse to a degree that it "might well have dissuaded a reasonable [person] from making or supporting a charge of [or complaint about] discrimination."

13

*Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006); *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). The assessment of whether a particular conduct or action can be found to be retaliatory is to be undertaken with particular attention to the attendant and surrounding circumstances. *Burlington Northern*, 548 U.S. at 69. The examination is focused on the alleged retaliatory action and not the conduct that brought about the original claim of discrimination. *Id.* Moreover, a material adverse action is one that "produces injury or harm." *Id.* at 67. The standard for judging whether an identified act or course of conduct is capable of producing injury or harm is an objective one. *Id.* And the "[c]ontext matters." *Id.*; *see Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280–81 (3d Cir. 2000)).

Here, Plaintiff asserts the North Warren Defendants retaliated against her by instituting disciplinary action against her in the form of school detention for "standing up to Defendant C.M., demanding to be left alone, and seeking to have defendant C.M. cease bullying M.H." (ECF No. 1 ¶ 60.) M.H.'s mere allegation the North Warren Defendants "institute[d] disciplinary actions against Plaintiff M.H., when M.H. attempted to verbally protect herself from Defendant C.M.'s ongoing sexual harassment and bullying" (*id.* ¶ 106) does not make out a plausible showing of an identified action that was intentionally implemented to cause harm or injury because M.H. made complaints about sexual harassment and bullying. *See Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006) ("The ultimate question in any retaliation case is an intent to retaliate *vel non*."). The facts, as alleged, do not permit an inference the North Warren Defendants harbored retaliatory animus and acted on it by serving M.H. detention. Therefore, having failed to make such a plausible showing with regard to any form of intentional adverse conduct attributable to the North Warren Defendants, it follows that a plausible showing of a causal connection between

M.H.'s complaints and the alleged retaliation has also not been set forth. For these reasons, Plaintiff has failed to plead a plausible claim of retaliation in violation of Title IX.

Accordingly, for the reasons stated above, Moving Defendants' Motion to Dismiss Count II as to the North Warren Defendants is **GRANTED**.

### B.  NJLAD (Count V)

Moving Defendants contend Plaintiff's NJLAD claim must be dismissed because Plaintiff fails to allege facts sufficient to plead a cause of action under NJLAD. (ECF No. 7-5 at 24–25.) Plaintiff counters stating the Complaint  has plausibly set forth facts establishing discrimination. (ECF No. 13 at 50, 52.) NJLAD provides:

> All persons shall have the opportunity to obtain . . . all the accommodations, advantages, facilities, and privileges of any place of public accommodation . . . without discrimination because of race, creed, color, national origin, ancestry, age, marital status, affectional or sexual orientation, familial status, disability, national origin, sex, gender identity or expression[.] This opportunity is recognized as and declared to be a civil right.

N.J. Stat. Ann. § 10:5-4.

In *L.W. ex rel. L.G. v. Toms River Regional Schools Board of Education*, 915 A.2d 535 (N.J. 2007), the New Jersey Supreme Court recognized a cause of action for hostile educational environment under NJLAD. There, the Court held to state a claim under NJLAD,

> an aggrieved student must allege discriminatory conduct that would not have occurred 'but for' the student's protected characteristic, that a reasonable student of the same age, maturity level, and protected characteristic would consider sufficiently severe or pervasive enough to create an intimidating, hostile or offensive school environment and that the school district failed to reasonably address such conduct.

*Id.*

"A school is liable for a hostile school environment when it grants a supervisor authority to control the school environment and the supervisor either abuses that authority or has actual or

constructive knowledge of the harassment and fails to take effective measures to end the discrimination." *Joyce v. City of Sea Isle City*, No. 04–5345, 2008 WL 906266, at * 23 (D.N.J. March 31, 2008). In evaluating the adequacy of the school's response to peer harassment, the factfinder "must determine the reasonableness of a school district's response to peer harassment in light of the totality of the circumstances." *L.W.*, 917 A.2d at 548.

In addition, the New Jersey Supreme Court has held "an individual within a public entity can only be held liable under the NJLAD as an 'aider or abettor.'" *Doe v. Schwerzler,* No. 06–3529, 2008 WL 4066338, at *5 (D.N.J. Aug. 27, 2008); *Mann v. Estate of Meyers*, 61 F. Supp. 3d 508, 529 (D.N.J. 2014) (citing N.J. Stat. Ann. § 10:5-12(e)). To be held liable as an aider and abettor, a plaintiff must show:

> (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation.

*Tarr v. Ciasulli*, 853 A.2d 921, 928 (N.J. 2004) (internal quotations and citations omitted). In order to determine whether a defendant provided "substantial assistance," a court may consider: (1) the nature of the act encouraged; (2) the amount of assistance provided by the defendant; (3) whether defendants was present at the time of the alleged harassment; (4) the defendant's relations to the others; and (5) the defendant's state of mind. *Id.* Concerning supervisor liability,

> [a] supervisor has a duty to act against unlawful gender-based harassment. Therefore, a supervisor can be individually liable when he breaches this duty through deliberate indifference to the harassing conduct . . . . Individual liability, however, even in the context of failure to act, 'require[s] active and purposeful conduct.

*Schwerzler*, 2008 WL 4066338, at *5 (citations and quotations omitted).

Here, the Complaint alleges the wrongful conduct at issue was North Warren Defendants'

deliberate indifference to ongoing sexual abuse and harassment by C.M. against M.H. Specifically, despite promises to investigate the sexual assault, Marcus failed to address Plaintiff's complaints and the sexual assault continued throughout the remainder of the school year and into the following school year. (*See* ECF No. 1 ¶¶ 48–50.) Further, while the abuse was ongoing, C.M. repeatedly made comments to M.H. in front of other students and teachers stating that C.M. wanted to touch M.H.'s vagina and breasts. (*Id.*) Moreover, despite Ritchie "immediately believ[ing]" M.H. was being sexually abused by C.M., Ritchie still attempted to "downplay" the sexual abuse by refusing to inform the aide who had been provided to C.M. about the allegations of sexual abuse. (*Id.*) While the Court finds Plaintiff has alleged the wrongful conduct at issue was the North Warren Defendants' deliberate indifference to sexual abuse and harassment, Plaintiff has not alleged enough facts to support the requirements of aiding and abetting. Because Plaintiff has pled no factual content concerning the Individual Defendants' "active and purposeful" support of the sexual abuse, there is no factual basis that would permit this Court to draw a reasonable inference that the Individual Defendants were liable for aiding and abetting under NJLAD and the Court therefore, dismisses Count V as to the Individual Defendants.

Accordingly, for the reasons stated above, Moving Defendants' Motion to Dismiss Count V is **DENIED** as to the North Warren Defendants and **GRANTED** as to the Individual Defendants.

### C.  Aggravated Sexual Assault (Count VI), Sexual Assault (Count VII), Assault (Count VIII), Battery (Count IX)

Plaintiff brings state law claims of negligence against Moving Defendants for aggravated sexual assault in violation of N.J. Stat. Ann. § 2C:14-2(a)(1), sexual assault in violation of N.J. Stat. Ann. § 2C:14-2(c)(1), and common law assault and battery. (ECF No. 1 at 35–47.) Moving Defendants argue Plaintiff's claims should be dismissed for failure to provide sufficient factual allegations in support of Plaintiff's claims. (ECF No. 7-5 at 27–28.) Plaintiff counters by arguing

the Complaint sufficiently alleges the Moving Defendants breached their duty to protect Plaintiff from harm, including sexual abuse. (ECF No. 13 at 38–39.) The Court agrees.

In order to prevail on a negligence cause of action in New Jersey, a plaintiff must prove: (1) defendants owed the plaintiff a duty of care; (2) defendants breached their duty; and (3) defendants' breach proximately caused the plaintiff's injuries. *See Robinson v. Vivirito*, 86 A.3d 119, 124 (N.J. 2014) (stating elements of a cause of action for negligence); *Lockhart v. Willingboro High Sch.*, 170 F. Supp. 3d 722, 737 (D.N.J. 2015). "[F]oreseeable risk is the indispensable cornerstone of any formulation of a duty of care." *Dunphy v. Gregor*, 642 A.2d 372, 376 (N.J. 1994).

As explained above with regard to Title IX, the Complaint sufficiently alleges the circumstances giving rise to the sexual assault were within the control of the North Warren Defendants, as the incident occurred on North Warren Regional's school grounds and while North Warren Regional was in session. The Complaint supplies ample factual allegations suggesting it was foreseeable C.M. was sexually abusing M.H. in the bathroom during the lunch period. It was foreseeable C.M., who was purportedly in a "dating relationship" with M.H., was sexually abusing M.H. in the girls' bathroom, where M.H. was instructed to meet C.M. every day at 10:45 a.m. during North Warren Regional's lunch period. (*Id.* ¶ 54.) It is plausible Plaintiff can prove Moving Defendants breached their duty of care to her as a particularly vulnerable student with intellectual impairments. That the Moving Defendants owed a heightened duty to protect a vulnerable young girl with learning disabilities is also plain.[9] *See Lockhart*, 170 F. Supp. 3d at 737 (noting defendants

---

[9] Indeed, the New Jersey Supreme Court has explained:

> Educators have '[n]o greater obligation . . . than to protect the children in their charge from foreseeable dangers, whether those dangers arise from the careless acts or intentional transgressions of

owed a heightened duty to protect student, who was a vulnerable teenaged girl with learning and communication disabilities).

Accordingly, for the reasons given above, Moving Defendants' Motion to Dismiss Counts VI, VII, VIII, and IX is **DENIED**.

### D.   False Imprisonment (Count X)

Moving Defendants argue Plaintiff's false imprisonment claim should be dismissed because the Complaint fails to sufficiently allege Moving Defendants falsely imprisoned M.H. or had reason to believe C.M. falsely imprisoned M.H. (ECF No. 7-5 at 30–31.) Plaintiff argues "[b]y trapping Plaintiff M.H. in confined spaces of the bathroom and the bathroom stall, for the purposes of sexually abusing Plaintiff M.H. all Defendants unlawfully restrained her liberty." (ECF No. 13 at 27.) The Court does not agree.

False imprisonment is "the constraint of the person without legal justification." *Mesgleski v. Oraboni*, 748 A.2d 1130, 1138 (N.J. Super. App. Div. 2000). The tort requires two elements: (1) "an arrest or detention of the person against his or her will" and (2) "lack of proper legal authority or legal justification." *Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097, 1117 (N.J. 2009). Here, while Plaintiff alleges "C.M. threatened and coerced M.H. into a school bathroom and thereafter sexually assaulted [] M.H." and "C.M. knowingly restrained [] M.H. unlawfully, interfering substantially with [] M.H.'s liberty for the purpose of committing sexual assault against

---

others . . . . School officials have a general duty 'to exercise reasonable supervisory care for the safety of students entrusted to them, and [are accountable] for injuries resulting from failure to discharge that duty.

*Jerkins ex rel. Jerkins v. Anderson*, 922 A.2d 1279 (N.J. 2007) (citations and quotations omitted); *see Jones v. Ewing Twp. Bd. of Educ.*, No. 3:09-CV-3536, 2010 WL 4669875, at *4 (D.N.J. Nov. 9, 2010).

[] M.H.," (ECF No. 1 . ¶¶ 187–88.), Plaintiff does not allege anyone aside from C.M. threatened or coerced Plaintiff into  North Warren Regional's girls' bathroom or that anyone aside from C.M. knowingly restrained Plaintiff  unlawfully. The Complaint does not allege any facts to suggest the Moving Defendants directly participated in the alleged detention of M.H, that the Moving Defendants agreed with C.M. to inflict a wrong or injury upon M.H., or that the Moving Defendants had any prior knowledge about C.M.'s apparent plan to repeatedly detain M.H. *See K.G. v. Owl City*, No. CV 17-8118, 2018 WL 6705679, at *3 (D.N.J. Dec. 20, 2018) (determining that where complaint failed to allege any facts to suggest defendants directly participated in the alleged detention of plaintiff or had knowledge of the detention, plaintiff would not be permitted to pursue a theory of direct liability for false imprisonment). As currently pled, the Court cannot find Moving Defendants were aware or should have been aware C.M. restrained or coerced M.H. into the school bathroom against her will.

Accordingly, for the reasons stated above, Moving Defendants' Motion to Dismiss Count X is **GRANTED**.

### E.  Negligent Hiring (Count XII), Negligent Supervision of Employees (Count XIII),  Negligent Retention (Count XIV)

North Warren Defendants contend M.H. cannot state a claim for negligent hiring, negligent supervision, or negligent retention because the Complaint is devoid of any facts sufficient to show the North Warren Defendants knew the Individual Defendants were unfit, incompetent, or dangerous. (ECF No. 7-5 at 31–32.) Plaintiff argues the North Warren Defendants could have reasonably foreseen the Individual Defendants' particular unfitness, incompetence, or dangerous attributes. (ECF No. 13 at 48.) The Court disagrees.

To be found liable for negligent hiring or supervision, a plaintiff must show: (1) "the employer knew or had reason to know of the particular unfitness, incompetence or dangerous

20

attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons" and (2) the employer's negligence in hiring or supervising the employee resulted in the dangerous attribute proximately causing plaintiff's injury. *G.A.-H. v. K.G.G.*, 210 A.3d 907, 916 (N.J. 2019) (quoting *Di Cosala v. Kay*, 450 A.2d 508, 516 (1982)). "To be found liable for negligent supervision or training, the plaintiff must satisfy what is essentially the same standard, but framed in terms of supervision or training." *Id.*  Importantly, "a board of education must take reasonable measures to assure that the teachers and administrators who stand as surrogate parents during the day are educating, not endangering, and protecting, not exploiting, vulnerable children." *Frugis v. Bracigliano*, 827 A.2d 1040, 1050 (N.J. 2003).

There are no facts alleged in the Complaint to support a claim that any of the Moving Defendants knew or should have known the Individual Defendants were unfit or dangerous prior to the allegations underlying M.H.'s present suit. Plaintiff merely advances conclusory statements and does not cite a particular unfitness or attribute of the Individual Defendants. *Schuler v. Monmouth Cty. Vocational Sch. Dist.*, No. 319-CV-00025, 2020 WL 1809676, at *6 (D.N.J. Jan. 9, 2020) (finding that conclusory statements will not satisfy a claim for negligent hiring and supervision).

Accordingly, for the reasons stated above, Moving Defendants' Motion to Dismiss Counts XII, XIII, and XIV as to the North Warren Defendants is **GRANTED.**

**F. Emotional Distress Claims (Counts XIX and XX)**

### 1. Intentional Infliction of Emotional Distress ("IIED") (Count XIX)

Moving Defendants argue the Complaint is completely devoid of any allegations demonstrating the Moving Defendants exhibited "outrageous conduct" sufficient to cause intentional infliction of emotional distress. (ECF No. 7-5 at 39–40.) Plaintiff argues the Complaint

well establishes Moving Defendants' actions proximately caused Plaintiff's emotional distress. (*See* ECF No. 13 at 54.) The Court disagrees.

Under New Jersey law, to establish a prima facie claim for intentional infliction of emotional distress, a plaintiff must show: "(1) that the defendant intended to cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the actions proximately caused emotional distress; and (4) that plaintiff's emotional distress was severe." *Witherspoon v. Rent–A–Center, Inc.*, 173 F. Supp. 2d 239, 242 (D.N.J. 2001) (citing *Buckley v. Trenton Savs. Fund Soc'y*, 544 A.2d 857 (N.J. 1988)). "An intentional infliction of emotional distress claim is rarely dismissed on a motion to dismiss." *Acevedo v. Monsignor Donovan High Sch.*, 420 F. Supp. 2d 337, 349 (D.N.J. 2006). However, a plaintiff will not satisfy the above elements by merely demonstrating a defendant acted "unjust, unfair and unkind." *Fregara v. Jet Aviation Bus. Jets*, 764 F. Supp. 940, 956 (D.N.J. 1991). In order to establish "extreme and outrageous" conduct, a plaintiff must sufficiently plead factual allegations to show the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Witherspoon*, 173 F. Supp. 2d at 242 (quoting *Buckley*, 544 A.2d at 863 (citation omitted)). As a threshold matter, the Court must determine whether a defendant's conduct meets this standard. *See Ali v. Jersey City Parking Authority*, No. 13–2678, 2014 WL 1494578, at *5 (D.N.J. Apr. 16, 2014) (citing *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988)). In order to establish severe emotional distress, a plaintiff must show emotional distress "so severe that no reasonable [person] could be expected to endure it." *Glenside West Corp. v. Exxon Co.*, 761 F. Supp. 1100, 1113 (D.N.J. 1991) (quoting *Buckley*, 544 A.2d at 864). Additionally, "New Jersey law [] requires plaintiffs to assert

that they sought treatment for their alleged distress." *Botts v. N.Y. Times Co.*, No. 03–1582, 2003 WL 23162315, at *9 (D.N.J. Aug. 29, 2003).

Accepting as true all of Plaintiff's allegations and construing the facts in the light most favorable to Plaintiff, the Court finds Plaintiff has not stated a claim for intentional infliction of emotional distress. Plaintiff has alleged no facts indicating the Moving Defendants—the School District, the Board, and the Individual Defendants—engaged in conduct that could be characterized as extreme and outrageous. The "elevated threshold" for finding outrageous conduct is only satisfied in extreme cases under New Jersey law. *Griffin v. Tops Appliance City, Inc.*, 766 A.2d 292, 296 (N.J. Super. Ct. App. Div. 2001). This high level of outrageousness is not evident from the face of the Complaint. For example, in *Lockhart v. Willingboro High School*, a 17-year-old student alleged she had been sexually assaulted by another student inside an empty classroom while school was in session. 170 F. Supp. 3d at 727. With regard to a teacher and assistant principal who had been sued by the victim for their failure to prevent this from happening, the court found that there were no facts that could support an inference of "intentional and outrageous conduct." *Id.* at 738–39; *see A.B. for C.D. v. Vineland Bd. of Educ.*, No. 17-11509, 2018 WL 3141831, at *8 (D.N.J. June 27, 2018). Similarly, nothing in the Complaint indicates the Moving Defendants recklessly allowed or intended for any of this to happen to M.H. The Court finds Plaintiff has failed to state a claim for intentional infliction of emotional distress.

Accordingly, for the reasons stated above, Moving Defendants' Motion to Dismiss Count XIX is **GRANTED.**

### 2.    Negligent Infliction of Emotional Distress ("NIED") (Count XX)

Moving Defendants argue Plaintiff failed to plead a claim for negligent infliction of emotional distress because "[d]amages resulting from subjective symptoms of depression and

anxiety" without indication of a permanent physical infirmity are not recoverable. (ECF No. 7-5 at 40.) Plaintiff does not appear to oppose dismissal. Consequently, the NIED claim can be dismissed on this basis alone. *See Lightfoot v. Healthcare Revenue Recovery Grp., LLC*, No. 14-6791, 2015 WL 1103441, at *4, 2015 U.S. Dist. LEXIS 29673, at *9 (D.N.J. Mar. 11, 2015) (stating the "[d]efendant's Motion to Dismiss Count Four is unopposed and will be granted"). However, even on the merits, Plaintiff's NIED claim fails, because the Complaint does not allege Plaintiff observed the death of or serious injury of a close family member or was placed in reasonable fear of immediate physical injury. *See id.*

Indeed, under New Jersey law, there are two legal theories under which a plaintiff can establish a *prima facie* claim for negligent infliction of emotional distress. First, a plaintiff can show: 1) "death or serious physical injury of another caused by defendant's negligence; 2) a marital or intimate family relationship between plaintiff and the injured person; 3) observation of the death or injury at the scene of the accident; and 4) resulting severe emotional distress." *Fleming v. United Parcel Serv., Inc.*, 604 A.2d 657, 686 (N.J. Super Ct. Law. Div. 1992). Second, a plaintiff can show "the defendant's negligent conduct placed the plaintiff in 'reasonable fear of immediate personal injury' which gave rise to emotional distress that resulted in a substantial bodily injury or sickness." *Jablonowska v. Suther*, 948 A.2d 610, 617 (N.J. 2008). Under the second standard, New Jersey law has adopted the "zone of danger" rule, where "immediate fear of personal injury could serve as the basis for recovery so long as 'substantial bodily injury or sickness' result." *Abouzaid v. Mansard Gardens Ass'n, LLC*, 23 A.2d 338, 344 (N.J. 2011).  Plaintiff is unable to satisfy a claim for NIED under either standard.[10]

_____

[10] To the extent Plaintiff claims she suffered mental anguish or panic attacks (ECF No. 13 at 54–55), it is to be regarded as too lacking in seriousness and too speculative to warrant the imposition of liability. *See Peteete v. Asbury Park Police Dep't*, No. 09–1220, 2010 WL 5151238, at *14

Accordingly, for the reasons stated above, Moving Defendants' Motion to Dismiss Count XX is **GRANTED**.

## IV.   CONCLUSION

For the reasons set forth above, Moving Defendants' Motion for Partial Dismissal (ECF No. 7-5) is **DENIED** as to Counts I and V against the North Warren Defendants and Counts VI, VII, VIII, and IX against Moving Defendants, and **GRANTED** as to Counts II, XII, XIII, and XIV against the North Warren Defendants, Count V against the Individual Defendants, and Counts X, XIX, and XX against Moving Defendants. An appropriate order follows.

Date: October 27, 2020                              */s/ Brian R. Martinotti*
                                                     **HON. BRIAN R. MARTINOTTI**
                                                     **UNITED STATES DISTRICT JUDGE**

---

(D.N.J. Dec. 13, 2010) (granting 12(b)(6) motion to dismiss because plaintiff's allegations of "humiliation, mental anguish, and emotional distress [were] insufficient as a matter of law to support a finding of severe mental distress").